■ ANN DECKER, Individually and as Assignee of All Causes of Action of PAULINE MASON against AMALGAMATED MUTUAL CASUALTY COMPANY, Now Known as EMPIRE MUTUAL INSURANCE COMPANY, Respondent-Appellant, v. AMALGAMATED MUTUAL CASUALTY INSURANCE COMPANY, Now Known as EMPIRE MUTUAL INSURANCE COMPANY, Appellant-Respondent.— In an action by one who has obtained a money judgment for personal injuries in a negligence action, to recover from the tort-feasor's liability insurer the monetary limit of the tort-feasor's insurance policy, $10,000, under section 167 (subd. 1, par. [b]) of the Insurance Law (first cause), and, as assignee of the tort-feasor, the total amount of said money judgment, some $250,000, on the grounds of neglect and breach of the insurer's duty to act fairly (second and third causes), the parties cross-appeal from an order of the Supreme Court, Orange County, dated January 23, 1973, which denied their cross motions for summary judgment on the second and third causes. Order modified by striking from the first decretal paragraph (which denied defendant's motion) the word "denied" and substituting therefor the word "granted". As so modified, order affirmed, with $20 costs and disbursements to defendant and with separate memoranda as follows: Hopkins, Acting P. J. This action arose as the result of a two-car automobile accident which occurred on May 30, 1968. William Brown and his passenger, Ann Decker, were the occupants of one car. Aleck Winkle was alone in the other car, which was owned by his sister, Mrs. Pauline Mason. After the accident, in which Brown was killed, suits were brought by Mrs. Decker and Brown's administratrix against Winkle and Mrs. Mason. A dispute arose as to whether Mrs. Mason was covered by an effective liability insurance policy, since her insurer, Amalgamated Mutual Casualty Company, claimed it had effectively canceled her policy the preceding March for failure of timely payment of one premium. Amalgamated asserted that therefore the policy was not in effect on the date of the accident and that it, Amalgamated, was not liable under the policy. This dispute culminated in an action for a declaratory judgment brought by the present plaintiff, Mrs. Decker, against the present defendant, Amalgamated. In that action the Supreme Court, Orange County, ruled that the policy was in effect, based on interpretations of the Banking Law and the Insurance Law. A declaratory judgment was entered August 17, 1970 and Amalgamated appealed therefrom to this court. In view of the declaratory judgment, plaintiff offered to settle her claim against Mrs. Mason within the limits of the latter's Amalgamated policy. No settlement was offered for the claim against Winkle, who was covered under the Amalgamated policy as a permitted driver, as well as being covered by his own insurance policy with Royal Globe Insurance Company. The offer of settlement was mailed to Amalgamated, which forwarded it to Mrs. Mason and to the counsel she had retained for herself during the pendency of the declaratory judgment action. Amalgamated rejected the offer to settle, still asserting it was not liable because the policy had been validly canceled, the declaratory judgment to the contrary notwithstanding. Counsel for Amalgamated allegedly had advised Amalgamated that the court's decision was incorrect and would be reversed on appeal. The tort action against Winkle and Mrs. Mason was given a trial preference and trial commenced on October 5, 1970. Mrs. Mason did not appear in the action, either through Amalgamated or her own attorney. Winkle did appear and was defended by his own insurer, Royal Globe. A verdict of $250,000 was returned in favor of Mrs. Decker. Thereafter, on May 24, 1971, we affirmed the declaratory judgment (*Decker* v. *Mason*, 36 A D 2d 1023). Amalgamated had not sought a stay of the tort trial. In the instant action it is asserted by plaintiff that Mrs. Mason had

valid causes of action in tort and in contract (the second and third causes of action) against Amalgamated, for breach of its implied duty to perform the insurance contract in good faith, for the amount of the judgment in excess of the insurance policy, some $240,000. Mrs. Mason assigned her claims to Mrs. Decker. Amalgamated moved for summary judgment to dismiss the second and third causes of action, which, as above stated, claim damages beyond the policy limits on either of two theories: tort or contract, that is, plaintiff asserts that Amalgamated is liable for these essentially punitive damages on the basis of a breach of its implied obligation under the insurance policy contract to perform the contract in good faith or on the basis of a negligent failure to perform the contract. Amalgamated contends that as a matter of law it did not act in such bad faith or so negligently that damages beyond the $10,000 policy limit should be imposed upon it. The standard for imposition of these excess damages was recently iterated in the Court of Appeals as follows: "a punitive measure of damages is not applied routinely for breach of contract; and bad faith requires an extraordinary showing of a disingenuous or dishonest failure to carry out a contract" (*Gordon* v. *Nationwide Mut. Ins. Co.,* 30 N Y 2d 427, 437, revg. 37 A D 2d 265). Amalgamated asserts that the declaratory judgment that there was coverage did not render its claim that there was no coverage not "arguable" (*Gordon, supra,* p. 431). Therefore, it is contended, Amalgamated did not act in bad faith or with gross negligence in failing to perform its contractual duties under the definition set forth in *Gordon* (*supra*). In *Gordon,* the Court of Appeals assumed that noncoverage was incorrectly asserted, but found that the carrier was not therefore necessarily liable for acting in bad faith, saying, "More than an 'arguable case' of coverage responsibility must be shown before liability may be imposed for breach of an implied covenant to act in good faith in denying coverage" (p. 431). In the instant case, we do not think the declaratory judgment deprived defendant of any arguments of noncoverage. Counsel for Amalgamated advised its client, albeit incorrectly, that the declaratory judgment was wrong and would be reversed on appeal. We do not think reliance on this opinion, although it ultimately proved incorrect, constituted bad faith or was so grossly negligent as to support the imposition of essentially punitive damages (*Gordon, supra,* p. 433). Furthermore, we also are influenced by the "actualities in the chain of events" (*Gordon, supra,* p. 433) in this case. As in *Gordon,* the chain of events which set the assertion of noncoverage in motion in the instant case was precipitated by Mrs. Mason's apparently admitted failure to make timely payment on her policy. The only reason the policy was not effectively canceled upon the failure to pay was because of failure of compliance with the technical standards of the Insurance Law and the Banking Law. The fact that Amalgamated continued to receive and to accept payments after the initial default in payment does not shield Mrs. Decker from the fact that it was Mrs. Mason's default in payment which set in motion the events which led to the assertion of noncoverage. Finally, we find that here, as in *Gordon,* no actual adverse economic consequences befell Mrs. Mason as a result of Amalgamated's assertion of noncoverage. Amalgamated has paid the limits of its policy; it should not be held now to pay punitive damages exceeding $240,000. Latham and Shapiro, JJ., concur, but solely on the ground that plaintiff's assignor — defendant's insured — suffered no damage by reason of the failure of defendant to defend. In the underlying personal injury action against Mrs. Mason and Mr. Winkle, the latter was defended in the action by his own insurance carrier. Since he was the primary tort-feasor and Mrs. Mason was only secondarily liable, as the owner of the motor vehicle, the defense interposed by Winkle's carrier inured to Mrs.

Mason's benefit. Under the circumstances, she suffered no damage by reason of defendant's failure to appear for and represent her at the trial in that action. We do not agree with the memorandum of Mr. Justice Hopkins insofar as it holds that defendant could not be charged with negligence or bad faith because it had relied upon the opinion of its counsel that the Mason policy had been properly canceled. The distinction between *Gordon* v. *Nationwide Mut. Ins. Co.* (30 N Y 2d 427), where reliance upon the opinion of counsel, although it subsequently proved to be incorrect, was held to be a good defense, and the facts in this case, is properly pointed out in the dissent herein of Mr. Justice Munder. Munder, J., dissents and votes to affirm, with the following memorandum, in which Martuscello, J., concurs: Issues of fact requiring determination have been raised as to defendant's bad faith in refusing to defend after a judgment had been entered which declared that the policy in question had not been canceled. I do not equate the circumstances of this case with that of *Gordon* v. *Nationwide Mut. Ins. Co.* (30 N Y 2d 427), on which Mr. Justice Hopkins relies. There, the refusal to defend was based on counsel's advice to the insurance company that it could ignore a single, entirely unrelated, 10-year-old decision at Special Term. In the instant case we have a refusal to defend on the asserted ground of noncoverage despite a declaratory judgment that the very policy in question had not been canceled and was in effect on the date of the accident. If this is not bad faith as a matter of law, it at least gives rise to a fact issue, which precludes summary judgment. It seems to me that a judgment declaring coverage responsibility presents more than an " arguable case" of such responsibility which Judge Bergan in *Gordon* (*supra,* p. 431) stated must be shown to impose liability for breach of the implied covenant to act in good faith in denying coverage.